IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LISA WALTERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00816-O-BP |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Lisa Walters seeks judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Act ("SSA"). After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

I.      STATEMENT OF THE CASE

Walters seeks disability benefits under Title II of the SSA. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 18-1 at Tr. 181; *see also* ECF No. 22 at 7. She applied for disability benefits in 2017 (Tr. 179-87), and reported disabilities of "nerve in neck," "morton's neuroma," and "depression." Tr. 208. The Commissioner decided she was not disabled and denied her application. Tr. 98, 114-115, 126-128. Walters requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 129–130), who conducted the hearing (Tr. 60–86) and affirmed the Commissioner's decision. Tr. 42-54.

After the Social Security Appeals Council denied further administrative review (Tr. 1), Walters filed this civil action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see*

*also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). She challenges whether substantial evidence supports denial of her application, and whether the ALJ applied correct legal standards in reaching her decision. *See* ECF No. 22.

## II.    STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.*

§ 404.1560(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in

the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d

492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617

(5th Cir. 1990)).

## III.    ANALYSIS

The ALJ proceeded through the sequential evaluation process. At step one, she found

Walters had not engaged in any substantial gainful activity since 2015. Tr. 44. At step two, she

identified several "severe impairments" that affect Walters, including "degenerative disc disease

of the cervical spine with spondylosis, radiculopathy and mild right median neuropathy, status

post-cervical fusion, lumbago with sciatica, right shoulder tendinitis, osteoarthritis of the

acromioclavicular (AC) joint, Morton's Neuroma with plantar fascial fibromatosis, calcaneal

spurs, and synovitis/tenosynovitis, and obesity." Tr. 45. At step three, she determined Walters's

impairments do not meet those listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 47-48. Before

proceeding to step four, the ALJ assessed Walters's RFC:

> [T]he claimant has the [RFC] to perform light work . . . except she can occasionally
> operate foot controls; she can never crawl or climb ladders, ropes, or scaffolds; she
> can frequently stoop; she can occasionally climb ramps and stairs, kneel, and
> crouch; she can frequently reach bilaterally, but she can only occasionally reach
> overhead bilaterally; and, she can frequently handle bilaterally.

Tr. 48. Based on the RFC, the ALJ found at step four that Walters can perform PRW as an

Employment Interviewer. Tr. 52. The ALJ made additional step-five findings that Walters can

perform similar light-work jobs like a cashier, marker, or sales attendant. Tr. 53. Accordingly, the

ALJ concluded she was not disabled. Tr. 53-54.

Walters asserts the ALJ committed numerous errors in the evaluation process. She claims

the ALJ "applied incorrect legal standards" during step three because the decision "does not

include analysis or explanation of how the findings were reached" and omits "favorable" evidence

4

of nerve root compression, ECF No. 22 at 11, 13, plus the ALJ neglected her duty to develop the record with a consultative examination. *Id.* at 13-14. Next, she argues that substantial evidence does not support the ALJ's finding on the severity of Walters's alleged thumb pain or the ALJ's RFC determination. *Id.* at 15-17. Finally, she says the ALJ reached the step-four decision without evidence of Walters's PRW and, alternatively, that the ALJ left unclear whether the decision was based on step four or five. ECF No. 22 at 17-18.

> **A.    At step three, the ALJ applied correct legal standards and reached a decision that substantial evidence supports.**

The Commissioner's decision denying disability benefits "shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1). There are no formalistic rules governing how the Commissioner, speaking through the ALJ, must articulate her decision. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The decision must give enough reasons to permit meaningful judicial review. *Kinney v. Astrue*, No. 5:09-cv-00008-C-BG, 2009 WL 2981907, at *3 (N.D. Tex. Aug. 28, 2009) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)), *rec. adopted*, 2009 WL 2981907, at *1 (N.D. Tex. Sept. 17, 2009). In reaching an unfavorable decision at step three, the ALJ should identify the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1 that are relevant to the claimant's symptoms and explain why the claimant's symptoms fail to qualify under those listings. *See Audler*, 501 F.3d at 448.

Here, the ALJ identified three different listings for which Walters's symptoms failed to qualify and devoted a separate paragraph to discussing each. Tr. 47-48. Walters takes issue with the ALJ's discussion of listing 1.04, a musculoskeletal impairment category relating to spinal disorders. 20 C.F.R. pt. 404 subpt. P., app. 1, § 1.04 (2020); *see* ECF No. 22 at 12-13. Claimants

5

meet listing 1.04 if they have a spinal disorder "resulting in compromise of a nerve root" and include evidence of the listing's subpart A criteria. *See* § 1.04A; *see also Perez v. Berryhill*, No. 4:16-cv-00052-O-BL, 2017 WL 776089, at *3 (N.D. Tex. Feb. 10, 2017), *rec. adopted*, 2017 WL 749181 (N.D. Tex. Feb. 27, 2017). Subpart A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." § 1.04A; *see also* Tr. 80 (Walters's testimony about "back" issues). She must prove all of subpart A's criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The ALJ's discussion of listing 1.04, set forth below, explained that Walters did not carry her burden:

> The claimant does not have an impairment or combination thereof that meets the severity required by listing for 1.04 (Disorders of the spine), because the cord, consistent with the findings below, does not demonstrate compromise of a nerve root with additional findings of: (A) Evidence of a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and positive straight leg raising; or, (B) Spinal arachnoiditis; or, (C) Lumbar Spinal Stenosis resulting in pseudoclaudi-cation (See 20 CFR Part 404 Subpart P, Appendix 1, 1.04). She does not have findings of a loss of gait and station, nor are there findings of lack of gross and fine manipulation. The undersigned finds that the claimant does not meet listing 1.04. (Ex. 1F, pgs. 3, 11, 15, 18, 25; 6F, pgs. 12, 16; 10F, pgs. 3, 7, 11; 12F, pgs. 13, 17-18; 14F, pgs. 6-7, 10-11, 15-16, 20-21, 25-26, 29-30, 36, 41; 15F, pgs. 9, 13).

Tr. 48. Attacking this paragraph's substance, Walters claims the ALJ summarily recites the listing without explaining any factual findings and only references the administrative record with "random 'string-like' citations to the exhibit file." ECF No. 22 at 11-12. According to Walters, this precludes meaningful review and warrants reversal under *Audler*. *See id.* at 11, 13.

The ALJ's discussion in *Audler* precluded meaningful judicial review because it "did not identify the listed impairment for which [the claimant's] symptoms fail to qualify" or "provide any explanation as to how [the ALJ] reached the conclusion that [the claimant's] symptoms are

insufficiently severe to meet any listed impairment." 501 F.3d at 448. By contrast, the ALJ here identified three listed impairments. Tr. 47-48. In discussing listing 1.04, she explained Walters's symptoms do not qualify because, for example, Walters "does not have findings of a loss of gait." Tr. 48; *see generally* 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00E(1) (2020) (Evidence of gait is relevant to spinal examination). The string citation to six exhibits the ALJ identified highlights office treatment records, hospital records, and progress notes indicating Walters's gait is "normal." Tr. 48 (citing Tr. 309, 317, 321, 324, 331, 674, 752, 756, 762, 766, 772, 776, 782, 787, 797).

The string citation also reveals evidence undercutting each criteria Walters had to prove under subpart A. As to limited spinal motion, the ALJ cited a hospital record and progress note providing that Walters's musculoskeletal "range of motion in major joints is normal." Tr. 48 (citing Tr. 503, 679). Office treatment records with musculoskeletal reports show Walters's "[a]nkle alignment and range of motion is normal" and that her "[m]etatarsal and metatarsal-phalangeal joint range of motion is noted to be within normal limits." Tr. 48 (citing Tr. 309, 317, 321, 324, 331, 614, 618, 622). As to motor loss with atrophy or muscle weakness, an office treatment record states Walters's "[m]otor Strength and Tone" is also "normal" (Tr. 48 (citing Tr. 801)), and a hospital record indicates Walters does not have muscle weakness. Tr. 48 (citing Tr. 678). Several progress notes documenting musculoskeletal motor exams all report Walters's muscle bulk and overall muscle tone are "[n]ormal in all extremities." Tr. 48 (citing Tr. 753, 757, 762, 767, 772, 776, 782, 787, 797).

The same evidence demonstrates Walters does not have accompanying sensory or reflex loss. Sensory exams show Walters's pinprick, light touch, and proprioception are either "normal" or "intact" in all extremities. Tr. 48 (citing 752, 756, 762, 766, 772, 776, 782, 787). The reflexes in her biceps, brachioradialis, triceps, patella, and Achilles are rated bilaterally as mostly "2+,"

sometimes "3+," though at least once "1+." Tr. 48 (citing 753, 757, 762, 766, 772, 776, 782, 787, 797); *see generally* WILLIAM W. CAMPBELL & RICHARD J. BAROHN, DEJONG'S THE NEUROLOGICAL EXAMINATION 572 (8th ed. 2019) ("0" means "absent"; "1+" means "present but diminished"; "2+" means "normal"; "3+" means "increased but not necessarily to a pathologic degree"; and "4+" means "markedly hyperactive [and] pathologic"). Finally, Walters has a musculoskeletal straight leg-raising test indicating "negative Bilateral," which undermines the final subpart A criterion. Tr. 48 (citing Tr. 797).

Walters contends the ALJ omitted "favorable" evidence from the analysis and left untouched an evidentiary "conflict" she should have resolved by developing the record with a consultative examination. ECF No. 22 at 13-14. Allegedly "favorable" to Walters is "electrophysiologic evidence of sub-acute cervical radiculopathy affecting [her] left C6 nerve root." *Id.* at 12 (quoting Tr. 463). She presents her October 2018 surgery, an "Anterior Cervical Discectomy for decompression of spinal cord and nerve roots," *id.* (quoting Tr. 665), as a reference point to highlight "post-surgical changes." *Id.* at 14. In 2019 Walters underwent an MRI, with her doctor examining its results and finding Walters had "C6-7 mild canal and severe left C7 and moderate right C7 neural foraminal stenoses." *Id.* at 13 (quoting Tr. 810). Directing the Court's attention to allegedly favorable evidence does not establish error, however, because the Court cannot reweigh the evidence or substitute its judgment for the ALJ, as doing so would go beyond the Court's limited scope of review. *Harris*, 209 F.3d at 417.

As to the evidentiary conflict, Walters contrasts her MRI results (Tr. 809-11) with a later-dated progress note in which a different doctor analyzed the same MRI yet made different findings, namely that Walters has "mild adjacent level disease at C6-7 without significant central or neural foraminal stenosis." Tr. 797. Walters believes the apparent conflict between the note, which the

8

ALJ cited in discussing listing 1.04 (Tr. 48), and the MRI, which the ALJ did not cite (*see id.*), "would trigger the ALJ's duty to develop the record" by ordering a consultative examination to address "any conflict." ECF No. 22 at 13.

Evidentiary conflicts are for the ALJ's resolution, not the Court's. *See Brown*, 192 F.3d at 496 (quoting *Selders*, 914 F.2d at 617). Ordering a consultative examination lies within the ALJ's discretion. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). A consultative examination "is a physical or mental examination or test purchased for [the claimant] at [the government's] request and expense from a treating source or another medical source." 20 C.F.R. § 404.1519. It is not required "unless the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision." *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977). The claimant bears the burden of raising the "requisite suspicion" about her impairment such that ordering the examination is necessary for the ALJ to make an informed decision. *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989).

The claimant in *Pearson* raised the requisite suspicion because she requested an examination, and her testimony, as corroborated by a doctor's report and recommendation, persuaded the court the exam was necessary to assess her impairment.  *Pearson*, 866 F.2d at 812-13. By contrast, the claimant in *Jones* did not raise suspicion because the exam at issue was unrelated to her originally claimed disabilities, and there was otherwise "no indication in the record that [the claimant] ever requested a consultative examination." *Jones*, 829 F.2d at 526. As in *Jones*, there is no indication here that Walters ever requested a consultative examination. Neither she nor her lawyer raised the issue during her hearing testimony (*see* Tr. 60–86), and she does not point to a doctor's report or recommendation (*see* ECF No. 22 at 13-14), unlike the claimant in *Pearson*.

Walters insists she has "not been offered" a consultative examination "during the entire administrative process." *Id.* at 14. But the ALJ was not required to offer or order such an examination unless it was necessary to reach her disability decision. *Turner*, 563 F.2d at 671. She had before her a complete record with supportive evidence dated before and after Walters's surgery and her MRI. *See, e.g.*, Tr. 48 (citing 762, 766-67, 772, 776, 782, 787 (after surgery), 797, 801 (after surgery and MRI results)). Substantial evidence supports a conclusion that the ALJ properly exercised her discretion in not ordering a consultative examination.

A reasonable mind could accept the ALJ's step-three decision on listing 1.04 based on the evidence of Walters's gait, range of motion, motor loss, and straight-leg test. *See Ripley*, 67 F.3d at 555 (quoting *Greenspan*, 38 F.3d at 236). Accordingly, substantial evidence supports the step-three decision. The ALJ also used correct legal standards under *Audler* because she identified the listing at issue, explained her rationale, and cited the substantial evidence in the record in support. Again, there are no formalistic rules governing how the ALJ must articulate her discussion. *Falco*, 27 F.3d at 164. The ALJ's step-three decision allows for meaningful judicial review and otherwise does not run afoul of 42 U.S.C. § 405(b)(1). The Court should affirm on this point.

**B.      Substantial evidence supports the ALJ's determinations relating to Walters's thumb-pain severity and RFC.**

**1.      Thumb-pain severity.**

Substantial evidence supports the ALJ's determination that Walters's thumb pain is not a medically determinable impairment. *See* Tr. 45. While the ALJ must consider the claimant's subjective evidence of pain, the ALJ has discretion in assessing the pain's disabling nature. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Walters testified that thumb complications make it difficult for her to complete daily activities like buttoning buttons, fastening zippers, or operating

10

motorized grocery carts. Tr. 75, 77. The ALJ considered Walters's testimony at step two, but concluded her thumb pain was a "purely subjective complaint." Tr. 45.

It is Walters's burden to corroborate her subjective complaint with "objective medical evidence" showing her pain is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Other than her testimony, Walters does not cite evidence mentioning her thumb or thumb pain, much less objective medical evidence satisfying the *Chambliss* threshold. *See* ECF No. 22 at 16. Nor did she originally indicate thumb pain in her disability application as a medical condition limiting her ability to work. Tr. 208. Even so, the evidence upon which the ALJ relied supports a conclusion that Walters's thumb pain is not a medically determinable impairment. Progress notes and an office treatment record show Walters with 5/5 strength in "wrist extension, grip, [and] hand intrinsics." *See, e.g.*, Tr. 48, 50 (citing Tr. 507, 762, 767, 772, 776, 782); *see generally* STEDMAN'S MEDICAL DICTIONARY, 568420 Westlaw (database updated Nov. 2014) ("intrinsic muscles of hand" means "muscles fully contained (origin, belly, and insertion) within the hand (palm and fingers)"). An August 2019 physical exam indicating the same added the following description of Walters's left and right hands: "no erythema, deformities, tenderness, warmth, trigger finger, or objective synovitis and good finger [range of motion]." Tr. 48, 50 (citing Tr. 801).

To the extent Walters identifies favorable or conflicting evidence, the Court must defer to the ALJ's discretion in assessing the thumb pain's disabling nature, including her weighing of the evidence and resolving evidentiary conflicts. *See Wren*, 925 F.2d at 128-29. The Court should affirm on this point.

2.     **RFC.**

Substantial evidence also supports the ALJ's RFC determination that Walters can perform "light work." Tr. 48. Determining RFC is the ALJ's responsibility. *Ripley*, 67 F.3d at 557. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. 404.1567(b). Here, two State Agency Medical Consultant ("SAMC") opinions, which the ALJ found persuasive, determined Walters could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds. Tr. 51-52 (citing Tr. 93, 108).

But according to Walters, the RFC analysis did not consider her nerve root compression and thumb pain relating to cervical radiculopathy or her associated headaches, foot pain, and medication side effects. ECF No. 22 at 17. She emphasizes favorable evidence showing she is moderately limited with respect to functional reaching and recreational exercise, and that her "pain, strength and range of motion limitations" are "suggestive of tendonitis and impingement in the right shoulder and cervical neural compression." *Id.* at 16-17 (quoting Tr. 342-43).

The ALJ's RFC analysis devoted one-and-a-half pages, single-spaced, to addressing Walters's alleged cervical and shoulder impairments. Tr. 49-51. The ALJ acknowledged Walters's evidence of tendonitis, impingement, and neural compression (Tr. 50), but found a more recent physical examination "indicating significant improvement." *Id.* (citing Tr. 801). The exam reveals Walters's cervical spine has "normal flexion and extension, no tenderness or spasms, and [range of motion] complete with age." Tr. 801. Her shoulders have "no tenderness, erythema, warmth, or objective synovitis and good [range of motion]." *Id.* The ALJ reconsidered the step-three evidence discussed above that undermines nerve-root compression, including the unfavorable musculoskeletal examinations showing normal gait, motor strength, and range of motion. Tr. 50. The same evidence speaks to Walters's alleged thumb pain, also discussed above.

Contrary to Walters's assertion, the ALJ considered Walters's alleged foot pain, but found unfavorable evidence showing Walters with 5/5 bilateral dorsiflexion and plantar flexion strength. Tr. 50 (citing Tr. 507, 674, 753, 757, 762, 767, 772, 776, 782-83, 787, 797); *see generally* STEDMAN'S MEDICAL DICTIONARY, 339710 Westlaw (database updated Nov. 2014) ("plantar flexion" means "bending the foot or toes toward the plantar surface"), 264780 Westlaw ("dorsiflexion" means "Upward movement (extension) of the foot or toes or of the hand or fingers"). Also supporting the ALJ's RFC determination was evidence of a physical exam showing both feet have "no acute symptoms" and "no tenderness, warmth, erythema, or objective synovitis and good [range of motion]." Tr. 50 (citing Tr. 801).

As to Walters's alleged headaches and medication side effects, the RFC analysis did not expressly mention them (*see* Tr. 48-52), and the Commissioner does not dispute this. *See* ECF No. 23 at 13-14. Walters acknowledges the ALJ was not required to articulate every specific piece of evidence accepted or rejected. ECF No. 22 at 11 (citing *Rhonda T. v. Saul*, No. 3:18-cv-1559-B-BN, 2019 WL 3948352, at *3 (N.D. Tex. July 29, 2019), *rec. adopted*, 2019 WL 3947782 (N.D. Tex. Aug. 21, 2019)). And, as with her alleged thumb pain, Walters does not identify evidence other than her testimony that establishes her headaches and medication side effects are impairments. *See* ECF No. 22 at 5-7, 17 (citing either testimony or nothing when referencing headaches or medication side effects). In fact, she did not mention headaches at the hearing. *See* Tr. 60–86. Claimants carry the burden of proof through the first four steps of the sequential evaluation process. *Audler*, 501 F.3d at 448. They must corroborate subjective complaints with objective medical evidence. *See Chambliss*, 269 F.3d at 522. Walters has not directed the Court to such evidence in the record. Without such evidence, the undersigned cannot find error on this subpoint.

Moreover, any alleged error relating to the RFC analysis did not harm Walters. Showing harmful error is a prerequisite to reversing the Commissioner's decision. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). The touchstone for assessing prejudice is whether errors "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Not only is the ALJ's RFC determination consistent with the SAMC opinions, but the ALJ also incorporated additional limitations to accommodate for Walters's hearing testimony and any other evidence that favored a disability finding. Tr. 50-52. The RFC limits Walters to "occasionally operate foot controls; she can never crawl or climb ladders, ropes, or scaffolds . . . she can occasionally climb ramps and stairs, kneel, and crouch . . . she can only occasionally reach overhead bilaterally." Tr. 48. These limitations, coupled with the evidence unfavorable to Walters's claims, further support the ALJ's RFC determination. The Court should affirm on this point.

### C.    Walters waived any error relating to her PRW, and her alternative argument about the ALJ's step four and five findings is unavailing.

For her final point of error, Walters contends there is no evidence of her PRW in the record, thus eliminating the basis for the ALJ's step-four decision. ECF No. 22 at 17. At step four, the ALJ used Walters's RFC and concluded she could perform PRW as an Employment Interviewer. Tr. 52. Accordingly, the ALJ found Walters not disabled. Tr. 53-54.

Walters did not detail the Employment Interviewer position in self-reporting her PRW to the Commissioner. *See* Tr. 209, 217. She reported prior work as an "administrator" doing "temp services," but provided no further explanation about this job. *See id.* The ALJ filled in the gap during the hearing, where Walters testified the administrator job was full-time, involved interviewing people and placing them in jobs, and did not require her to supervise other employees. Tr. 66-67, 82. Using this testimony, a testifying vocational expert ("VE") classified the job as

14

"Employment Interviewer." Tr. 81. When presented with the RFC-based hypothetical question, the VE testified that Walters could perform this position. Tr. 82-83. If Walters, who was present at the hearing and represented by counsel, disagreed with the "Employment Interviewer" PRW classification, then she was "obligated to press the issue on cross-examination" of the VE during the hearing. *Griffin v. Colvin*, No. 3:15-cv-00186, 2016 WL 6476994, at *5 (S.D. Tex. Oct. 31, 2016) (citing *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000)). On cross examination, Walters's lawyer asked the VE variations of the RFC-based hypothetical question, but did not challenge the "Employment Interviewer" classification. Tr. 84-85. Walters waived this issue for appeal. *See Griffin*, 2016 WL 6476994, at *5.

Walters alternatively argues for reversal because it is "unclear as to if the denial is based on Step 4 or Step 5 findings as it offers findings for both," leaving it "unknown, who, ultimately, met their burden of proof." ECF No. 22 at 18. Indeed, the ALJ included step-five findings and a conclusion with her step-four discussion. Tr. 52-53. The ALJ was not required to proceed to step five once she determined Walters could perform PRW at step four. *See* 20 C.F.R. 404.1520(a)(4). That she did so anyway and commingled her step-five analysis with her step-four discussion was harmless error. *See Alexander v. Astrue*, 412 F. App'x 719, 721-22 (5th Cir. 2011). The step four and five findings are alternative but consistent bases for supporting the same conclusion—Walters is not disabled within the SSA's definition of the term. *See id.*

At both steps, the ALJ applied Walters's RFC in analyzing whether she could perform work, and at both steps the ALJ relied on VE testimony in determining she could. Tr. 52-53. In addition to finding Walters could perform the Employment Interviewer position at step four, the ALJ found at step five that Walters could perform similar light-work jobs like a cashier, marker, or sales attendant. Tr. 53. The ALJ's identifying the evaluation-process step at which her decision

is based facilitates judicial review. *Lovelace*, 813 F.2d at 59. Because of the consistency between the ALJ's step four and five analyses, any alleged error does not inhibit judicial review, and there is otherwise no indication the ALJ's additional findings prejudiced Walters in pursuing her disability benefits application. The Court should affirm on these final points.

## IV.    CONCLUSION

Because the ALJ employed the correct legal standards and substantial evidence supports her decision, Walters has failed to show that reversal of the ALJ's decision is required. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on November 5, 2021.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

17